UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> ) <br> HUDSON CONSTRUCTION COMPANY, ) <br> ) <br> *Defendant*. ) | Case No. 1:25-cv-124 <br><br> Judge Atchley <br><br> Magistrate Judge Steger |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Hudson Construction Company's Motion to Dismiss or, In the Alternative, to Stay or Administratively Close the Case Pending the Underlying Litigation [Doc. 19], asking the Court to exercise its discretion to decline jurisdiction over this declaratory judgment action or, in the alternative, stay this case pending the resolution of the litigation this matter arises out of. For the following reasons, the Court will **GRANT** Hudson's Motion [Doc. 19] and discretionarily decline to exercise jurisdiction over this action.

**I.    BACKGROUND**

This dispute arises from two consecutive insurance policies (the "Policy") issued by Plaintiff Westfield Insurance Company to Hudson, which provided both Commercial General Liability coverage and Commercial Liability Umbrella coverage. [Doc. 1 at ¶ 27]. After obtaining the Policy, Hudson entered into two separate contracts to construct large-scale residential developments in Texas. [*Id.* at ¶¶ 10,19]. As construction progressed on the projects, disputes emerged, ultimately giving rise to litigation. [*Id.*].

On July 2, 2024, Atlantic Urbana Meadowlake, LLC filed suit against Hudson in Texas state court, alleging, among other things, breach of contract and negligence arising from the

construction project. [*Id.* at ¶¶ 18–26]. The following day, Atlantic Urbana II Juniper Pointe, LLC filed a similar action against Hudson in Texas state court, likewise asserting claims for breach of contract and negligence. [*Id.* at ¶¶ 9–17]. Both actions were subsequently removed to the U.S. District Court for the Western District of Texas (collectively the "Underlying Litigation").[1] [*Id.* at ¶¶ 9, 18].

In response to the Underlying Litigation, Hudson sought indemnity and a defense under the Policy. [*Id.* at ¶ 28]. Westfield agreed to defend Hudson in the Underlying Litigation under a reservation of rights and later filed the instant action seeking a declaration that it was not obligated to defend or indemnify Hudson under the Policy. [Doc. 1]. Now, Hudson seeks to dismiss, or alternatively stay or administratively close, this action. [Doc. 19]. Westfield has responded in opposition to the Motion, [Doc. 22], and Hudson has replied, [Doc. 27]. Hudson has also filed a Supplemental Brief in Support of its Motion, [Doc. 28], to which Westfield has responded, [Doc. 29]. Having reviewed the record and the parties' briefing, the Court is now prepared to rule.

II. ANALYSIS

Pursuant to the Policy, Westfield agreed to defend and indemnify Hudson against all sums that Hudson becomes legally obligated to pay as damages because of, among other things, "property damage," subject to the terms, conditions, and exclusions of the Policy. [Doc. 1 at ¶¶ 30–63]. Ultimately, the gravamen of this instant action hinges on whether the complaints filed in the Underlying Litigation assert claims that implicate "property damage," as defined under the Policy. If they do, as Hudson contends, Westfield is obligated to defend and indemnify Hudson. But, if they do not, as Westfield argues, Westfield is under no obligation to defend or indemnify

---

[1] The cases are docketed as *Atlantic Urbana Meadowlake, LLC v. Hudson Construction Company*, Case No. 1:24-cv-00913, and *Atlantic Urbana II Juniper Pointe, LLC v. Hudson Construction Company*, Case No. 1:24-cv-00911.

Hudson. As such, Westfield has brought this declaratory judgment action ("DJA") pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, asking this Court for a declaration that the Underlying Litigation does not implicate "property damage," as defined under the Policy, and, therefore, Westfield has no duty to defend or indemnify Hudson. [Doc. 1].

"The Declaratory Judgment Act provides that a district court '*may* declare the rights and other legal relations of any interested party seeking such declaration…'." *Travelers Indem. Co. v. Bowling Green Professional Associates, PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (citing 28 U.S.C. §2201(a) (emphasis added)). The "Act gives district courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *American Guarantee and Liability Insurance Co. v. Norfolk Southern Railway Co.*, 278 F. Supp. 3d 1025, 1035 (E.D. Tenn. 2017) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). The Sixth Circuit, however, has "cautioned district courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Emps. Mut. Cas. Co. v. Clifford*, No. 5:23-271-KKC, 2024 U.S. Dist. LEXIS 87474, at *4 (E.D. Kent. May 15, 2024) (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)).

In the Sixth Circuit, district courts consider the five *Grand Trunk* factors when determining whether to exercise jurisdiction under a DJA. These factors are: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used for procedural fencing or to provide an arena for a race to res judicata; (4) whether the use of declaratory action would increase friction between state and federal courts or improperly encroach on state jurisdiction; and (5) whether there is a better or more effective alternative remedy.

*Travelers Indem. Co.*, 495 F.3d at 271.

Hudson argues that dismissal of this action is appropriate because the facts and circumstances here do not warrant an exercise of discretionary jurisdiction when analyzed under the *Grand Trunk* factors. [Doc. 20 at 6–11]. Westfield disagrees, believing that, on balance, the factors support an exercise of jurisdiction. [Doc. 22 at 5–14]. The Court will now analyze each factor in turn.

### A. Factors One and Two: Will the Declaratory Action Settle the Controversy and Clarify the Legal Relations?

The first two *Grand Trunk* factors are generally considered collectively since a declaratory judgment that settles the controversy will almost certainly clarify the legal relations at issue. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019). However, district courts within this circuit have recognized "a split in Sixth Circuit decisions regarding these [first two] factors." *Philadelphia Indemnity Insurance Company v. Priority Pes Control, LLC*, 398 F. Supp. 3d 280, 283 (M.D. Tenn. 2019). One line of cases has held that the proper inquiry is whether the declaratory judgment action will settle the immediate controversy. *Id.* The other line of cases concluded that the appropriate question is whether the declaratory action will settle the "ultimate, underlying state-court controversy, not just the immediate controversy…before the district court." *Id.* Ultimately, the difference in these cases appears to turn on competing policy considerations and whether the discrete controversy before the court involves factual disputes at the heart of the underlying litigation. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008).

Hudson argues that under any analysis, exercising jurisdiction here will not settle the controversy between the parties because the Underlying Litigation contains numerous factual disputes that must be resolved before this Court can make its determination. [Doc. 20 at 7]. In essence, because the Underlying Litigation includes negligence claims, Hudson maintains that the

existence of "property damage," as defined under the Policy, will ultimately depend on specific factual findings, including the nature of the harm to the properties and who is responsible for that harm. [*Id.*]. Without such findings, Hudson argues, this Court could only give "advisory opinions based on differing sets of potential factual outcomes." [*Id.*]. Conversely, Westfield argues that the only issue before this court is the question of coverage since Westfield is not a party in the Underlying Litigation. [Doc. 22 at 6]. In its view, an exercise of jurisdiction here would settle the coverage controversy between Hudson and Westfield. [*Id.*].

Ultimately, a declaration of coverage or non-coverage at this point in the litigation would do little to resolve the discrete controversy between the parties, nor would it resolve the controversy in the Underlying Litigation. As it stands, the district court in the Underlying Litigation will have to make its own findings with respect to a multitude of factual issues regarding Hudson's purported negligence and the damage it allegedly caused.[2] If this Court was to hold, for instance, that Westfield was not obligated to indemnify Hudson, that would necessitate a finding that no "property damage," as defined under the Policy, occurred. However, to make such a finding, the Court would need to "inquire into matters being developed through [] discovery" in the underlying court regarding the type of damages that occurred, who caused the damages, and whether Hudson is ultimately liable for those damages. *Scottsdale*, 513 F.3d at 556. These are factual findings that the district court in the Underlying Litigation will ultimately resolve. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813–814 (6th Cir. 2004) (holding that a declaratory judgment would not resolve the insurance coverage controversy because it rested on

---

[2] The plaintiffs in the Underlying Litigation have filed amended complaints alleging that Hudson, or its subcontractors, damaged the properties by negligently installing sewer lines, failing to protect materials from weather exposure, improperly installing windows and roofs, and requiring "rip and tear work." [Doc. 28 at 3].

a fact-based question of state law to be resolved in the underlying negligence action); *White Pine Ins. Co. v. McIntosh*, No. 5:21-238-KKC, 2022 U.S. Dist. LEXIS 118416, at *16–17 (E.D. Kent. July 6, 2022) ("To determine whether there is indemnity for Rutherford's claims of negligence and intentional assault, the Court may have to resolve the same factual issues that go to the merits of those state court claims—factual questions such as what Williams actually did or did not do, Williams's employment status, whether Williams has a history of acting violently or aggressively, and if so, whether Non-Stop had knowledge of that history."); *Allmerica Fin. Benefit Ins. Co. v. Eagle Sales Co.*, No. 2:17-cv-025450JPM-cgc, 2020 U.S. Dist. LEXIS 257750, at *20 (W.D. Tenn. Jan. 14, 2020) (finding that the first factor weighed in favor of exercising jurisdiction because the DJA did not require the court to settle factual disputes regarding the underlying tort case in order to settle the controversy).

Westfield disagrees, arguing that the Underlying Litigation has "proceeded to the point that the Underlying Parties have clearly elucidated the factual and legal basis of their claims and the damages they seek as a result." [Doc. 22 at 7]. In support of its position, Westfield primarily relies on expert testimony in the Underlying Litigation, which it contends demonstrates that Hudson's conduct amounted to nothing more than a failure to meet contractual deadlines. [*Id.* at 7–8]. As such, Westfield asserts the claims sound solely in breach of contract rather than negligence and therefore do not implicate "property damage" as defined under the Policy and Tennessee law. [*Id.*]; *see Blaylock & Brown Constr., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 153 (Tenn. Ct. App. 1990) (finding that "property damage" in an insurance contract covers tort liability and not contractual liability).

However, Westfield's argument fails for two reasons. First, the fact that discovery in the Underlying Litigation has substantially evolved does not mean that the factual disputes have been

6

resolved. Questions concerning the nature of the alleged harm, its cause, and whether Hudson's conduct constitutes negligence remain matters for the district court in the Underlying Litigation to resolve. If this Court were to make a ruling before these matters are resolved, it could reach inconsistent findings. Second, Westfield's argument rests on its own assessment of the merits of the underlying negligence claims. This Court's role is not to preemptively determine whether those claims will ultimately succeed or fail. Rather, whether the evidence in the Underlying Litigation supports a finding of negligence is a determination more appropriately suited for the underlying court to make. Therefore, because any determination by this Court at this stage would be necessarily speculative, a declaration in this action would be largely duplicative and would not "settle the controversy." *Travelers Indem. Co.*, 495 F.3d at 271.

As to the second *Grand Trunk* factor, a declaration here would also not meaningfully clarify the legal relations between all the parties involved in both this action and the Underlying Litigation. Until the district court in the Underlying Litigation resolves the factual disputes before it, any declaration by this Court would amount to nothing more than an advisory opinion based on a range of potential outcomes. Moreover, because Hudson and Westfield's coverage dispute is not at issue in the Underlying Litigation, it would not settle the controversy as to all the parties.

Accordingly, the Court finds that the first and second factors weigh against exercising jurisdiction.

### B. Factor Three: Is this Action Being Brought for Procedural Fencing Purposes?

According to the Sixth Circuit, a district court should not "impute an improper motive to a plaintiff where there is no evidence of such in the record." *Scottsdale Ins. Co.*, 513 F.3d at 558 (internal citation omitted). Here, Hudson agrees that there is no evidence of an improper motive in the record. [Doc. 20 at 9]. Therefore, this third factor is neutral in the absence of facts

demonstrating improper motive. *Travelers Indem. Co.*, 495 F.3d at 272.

### C. Factor Four: Will the Declaratory Action Increase Friction Between State and Federal Courts?

Because there is no underlying state court proceeding in this action, the fourth *Grand Trunk* factor is either neutral or not relevant. *DG Smoky, LLC v. Aunt Bug's Cabin Rentals, LLC*, No. 3:24-CV-364-TAV-JEM, 2024 U.S. Dist. LEXIS 207969, at *18–19 (E.D. Tenn. Oct. 4, 2024).

### D. Factor Five: Is there a more effective alternative remedy?

"A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Scottsdale Ins. Co.*, 513 F.3d at 562 (quoting *Grand Trunk W.R.R. Co. v. Consol., Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). Hudson suggests that Westfield should pursue the coverage issues either in Tennessee state court or the Texas federal court in which the Underlying Litigation is pending. The Court finds that both forums would provide a more effective alternative remedy in this case.

First, "Tennessee provides a clear and concise avenue for a plaintiff's declaratory judgment action to proceed through Tenn. Code Ann. § 29-14-101 [et seq.] and Tenn. R. Civ. P. 57." *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 Fed. Appx. 431, 441 (6th Cir. 2018). And, while it is true that federal courts sitting in diversity routinely apply state contract law, Tennessee courts are in a "superior position" to resolve questions of Tennessee contract law. *Id.*

Second, Westfield has the option of either intervening in the Underlying Litigation or filing a traditional indemnity action at the conclusion of the Underlying Litigation. Here, the Texas federal court, as the court presiding over the underlying tort action, can "combine the two actions so that all issues could be resolved by the same judge." *Id.* Moreover, the Sixth Circuit has indicated that a separate civil action in the state court deciding the underlying tort action is usually in a better position to resolve the case. *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278–79 (6th Cir.

1990). And while the Underlying Litigation is before a federal court, the same principle still applies. Not only can Texas federal court apply state contract law, but it is in a superior position to adjudicate this action since it is already addressing the legal and factual issues on which Westfield seeks a declaration of rights.

Accordingly, the Court finds that the fifth factor also weighs in favor of declining to exercise jurisdiction.

On balance, the *Grand Trunk* factors weigh in favor of discretionarily declining to exercise jurisdiction over this matter. Accordingly, Defendant's Motion to Dismiss will be **GRANTED**. Hudson's motion [Doc. 19] also requested, in the alternative, that the Court stay this matter pending resolution of the Underlying Litigation. Because this case will be dismissed, it is not necessary for the Court to decide whether such relief is appropriate.

### III. CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss [Doc. 19] is **GRANTED**. The Court will decline to exercise jurisdiction over this action. Accordingly, this action is **DISMISSED WITHOUT PREJUDICE**. A separate judgment will enter.

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**